UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACE HARDWARE CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 7738 |
| v. | ) |
| | ) Judge John W. Darrah |
| THE EXPO GROUP, L.P., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ace Hardware Corp. ("Ace"), filed suit against Defendant, The Expo Group, L.P. ("Expo"), seeking a declaratory judgment regarding its contractual obligations, or lack thereof, to Expo. Expo has moved to dismiss or, in the alternative, to transfer venue.

## BACKGROUND

Ace is a Delaware Corporation with its headquarters in Oak Brook, Illinois. Expo is a Texas limited Partnership with its principal place of business in Irving, Texas. Expo is in the business of producing trade shows. In 1996, Expo and Ace entered into a contract ("the 1996 Contract") whereby Expo would produce Ace's bi-annual trade shows for a term of ten years. In 2005, the parties began discussing an extension to the 1996 Contract. Ace advised Expo that it wanted Expo to continue to produce its bi-annual trade shows, and the parties entered into negotiations to extend the 1996 Contract. Although Ace never signed the new contract, Expo continued to produce Ace's trade shows as if the new contract was in effect.

On November 18, 2009, Ace informed Expo that it would not be using Expo's services for its next trade show in the Spring of 2010. On December 14, 2009, Ace filed this suit, seeking a declaratory judgment that no enforceable contract exists between Ace and Expo.

## ANALYSIS

*Motion to Dismiss - Declaratory Judgment Act*

Expo argues that this suit should be dismissed based on the policies underlying the Declaratory Judgment Act. Expo begins by pointing out that while, in general, federal district courts follow the "first to file" rule in determining which of two mirror image suits take priority, an exception exists where a party files a declaratory judgment action solely to deprive the would-be plaintiff of his choice of forum. Here, Expo argues, Ace is improperly seeking a declaratory judgment in this district to avoid a suit by Expo in Texas.

While Expo's legal theory is generally sound, *see, e.g., M Credit, Inc. v. Cadlerock, L.L.C.*, 2003 WL 21800017 (N.D. Ill. July 31, 2003) (dismissing suit where plaintiff won the "race to the courthouse" by filing a declaratory judgment suit), Expo's factual support is lacking. Specifically, Expo does not claim to have brought suit in Texas against Ace. Expo has not even alleged that it intended to file suit against Ace, in Texas or elsewhere. Instead, Expo points to a suit that Freeman Decorating Services, Inc. ("Freeman") brought against Expo in the Northern District of Texas. Freeman, a competitor of Expo (which Expo believes is now producing trade shows for Ace), filed a declaratory judgment action against Expo on December 15, 2009, challenging certain patents owned by Expo. Expo claims that Freeman and Ace are acting in concert in filing suits against Expo.

The relevance of Freeman's suit to the motion before the Court is not altogether clear. Ace is not a party to Freeman's suit, nor is Freeman a party to this suit. Expo does not explain how the issues in this case, which concern contractual obligations between Ace and Expo, relate

to the Freeman case, which is described as a patent suit. Thus, there is nothing to support Expo's assertion, this was a race to the courthouse in which the proper plaintiff was deprived of its choice of forum.

The purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (quoting *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969)). Here, Ace asserts that the parties have been arguing since 2008 about whether Ace was locked into a long-term contract with Expo based on the negotiations begun in 2005. Since October 2008, the parties' attorneys have exchanged multiple letters stating their positions as to whether there was an enforceable contract in effect. Ace argues that its suit is consistent with the purpose of the Declaratory Judgment Act in that Ace must determine whether it is contractually bound to use Expo for future conventions. Expo has offered no rebuttal to this argument.

Therefore, because Expo has not shown that this was a race to the courthouse, in violation of the policies underlying the Declaratory Judgment Act, Expo's motion to dismiss on that ground is denied.

*Motion to Dismiss - Improper Venue*

In its opening brief, Expo argued that venue was not proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a). Ace counters that a substantial part of events giving rise to this suit occurred in the Northern District of Illinois. In its reply, Expo essentially concedes

the point, stating "venue *may* be proper in the Northern District of Illinois" and failing to address the issue further.

As Ace points out, a plaintiff is not required to prove that the chosen venue has the most substantial contracts to the dispute. Rather, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Here, the face-to-face negotiations that Expo claims led to an enforceable contract occurred in Oak Brook, Illinois. As noted, Expo has not argued that this activity within the district is not sufficient to make venue in this district proper.

Therefore, Expo's motion to dismiss for improper venue is denied.

*Motion to Transfer*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In evaluating the convenience to the parties and witnesses, a court should consider: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000) (*Amoco*). The party requesting transfer has the burden of showing that the transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

A plaintiff's choice of forum is entitled to substantial weight, especially when it is the plaintiff's home forum. *Pava v. Drom International., Inc.*, 8 F.Supp.2d 1062, 1064 (N.D. Ill. 1998). Expo argues that Ace's choice of forum is entitled to less weight because the events

4

relevant to the suit occurred outside of Illinois. Expo points out that none of the trade shows Expo has produced for Ace since 1996 occurred in Illinois. The cancelled March 2010 show, which Expo asserts is central to its breach of contract claim (yet to be filed), was to take place in Louisiana.

Expo's arguments are not persuasive. The locations of the trade shows dating back to 1996 are not relevant to this suit. Nor are the locations of the trade shows post-dating 2005 particularly relevant either. The dispute in this case concerns what occurred during negotiations begun in 2005 to extend the 1996 Contract, which took place in the Northern District of Illinois. Therefore, Ace's choice of forum is entitled to substantial weight.

The situs of material events also favors Illinois. As just discussed, the events most relevant to this dispute – the contract negotiations – occurred in Illinois. This factor weighs against transfer.

Expo admits that the third and fourth factors, sources of proof and convenience to parties, do not favor transfer. Expo and Ace both assert that their relevant documents and employee witnesses are located in their home forums, Texas and Illinois, respectively. Thus, this factor is neutral.

With respect to convenience of the witnesses, Expo argues that it will likely need the testimony of Freeman employees. Those employees, Expo asserts, would be able to testify to Ace's understanding of its contractual obligations to Expo, as revealed through negotiations with Freeman. Freeman's headquarters is in Texas, and Expo claims that the majority of the Freeman witnesses would likely be located in Texas. Ace responds that Expo's arguments are largely

speculative as Expo has failed to state with specificity where the Freeman witnesses are located and their connection with this suit.

"The party requesting the transfer has the burden of demonstrating who its witnesses are, the nature of their testimony, and how important that testimony will be to the case." *Metzger v. SleeceCo, Inc.*, 2010 WL 563073, at *3 (N.D. Ill., February 12, 2010) (internal quotations omitted). Expo offers little beyond speculation as to the identity or testimony of the potential Freeman witnesses. Thus, this factor weighs only slightly in favor of transfer.

In considering the interests of justice, the court should consider the speed with which the case would proceed to trial, the courts' familiarity with the applicable law and relation of the community to the occurrence at issue. Here, the parties agree that speed of processing will not be affected by any transfer.

Expo argues that Texas law will apply to the dispute (the 1996 Contract states that it is to be governed by Texas law) and that this factor weighs in favor of transfer since Texas courts have more experience applying Texas law. Ace responds that this case is not about the 1996 Contract but whether a contract was formed as a result of the negotiations begun in 2005. Applying Illinois choice-of-law rules, namely, the most significant relationship test, Ace argues that Illinois law applies because the face-to-face negotiations occurred in Illinois. The Court need not decide this choice-of-law question now. Even if Expo were correct that the choice-of-law provision in the 1996 Contract governs, federal courts routinely apply laws of other states. Thus, this factor does not favor transfer.

Expo initially admits that the relationship to the community is a neutral factor. Ace, not willing to concede a draw, argues that because its Spring 2011 convention is taking place in

Chicago, the Northern District of Illinois has a stronger interest in this case. In reply, Expo argues that because of the ongoing Freeman/Expo litigation in Texas, Texas has an interest in resolving all disputes between Expo, Freeman and Ace. To the extent that this litigation could interfere with the Spring 2011 convention in Chicago, the community of this district does have an interest. Expo still has not shown how Ace is involved in the patent dispute between Expo and Freeman, discussed above. Thus, this factor is either neutral or weighs slightly against transfer.

In summary, Ace's choice of forum and the situs of material events favor retaining the case here. Convenience of the witnesses may favor transfer, but Expo has not made the necessary demonstration regarding the relevant factors. Relationship to the community may slightly favor of keeping the case in this district. On balance, Expo has not shown that transfer is warranted. Therefore, the motion to transfer is denied.

## CONCLUSION

For the foregoing reasons, Expo's motion to dismiss or, in the alternative, to transfer is denied.

Dated: June 8, 2010

JOHN W. DARRAH
United States District Court Judge